IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


C.D.M.,[1]
        Plaintiff,

v.                                                          Case No. 19-1133-JTM

ANDREW SAUL,
Commissioner of Social Security,
        Defendant.


MEMORANDUM AND ORDER


      C.D.M. applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 on May 20, 2016. The Commissioner of Social Security denied her application on August 12, 2016 upon initial review (Tr. 61-70) and upon reconsideration on December 22, 2016 (Tr. 72-83), and C.D.M. sought review by an Administrative Law Judge (ALJ). Following a hearing on April 4, 2018 (Tr. 3-43), the ALJ determined that C.D.M. was not disabled within the meaning of the Act. (Tr. 31-59). The decision of the Commissioner became final when the Appeals Council declined C.D.M.'s request for review on March 18, 2019. (Tr. 4-6).

      C.D.M. then filed this appeal, raising four arguments. She contends that the ALJ failed to properly assess her fibromyalgia and associated subjective symptoms, that the

---

[1] Consistent with District policy, the court uses plaintiff's initials to preserve privacy interests.

ALJ's RFC is not supported by substantial evidence and his analysis was flawed, and the ALJ's subjective symptom analysis was flawed.

Plaintiff-claimant C.D.M. was born on December 27, 1972, and has stated that she became disabled beginning March 1, 2014 due to degeneration in her spine, sciatica, muscle spasm, nerve problems, and high cholesterol (Tr. 193-94, 225. She has a high school education, and has previously worked assistant as café manager, telephone catalog call taker, lead appointment seller, and fast food manager.

The ALJ found that C.D.M. had the severe impairments of multilevel degenerative disc disease with radiculopathy, somatic dysfunction, obesity, degenerative disc disease of the right foot, and fibromyalgia. She also suffers from hypercholesteremia and diabetes, but these are well managed with treatment and do not limit her ability to work. (Tr. 19). None of C.D.M.'s impairments meet the listed impairments of 20 CFR Part 404, Subpart P, Appendix 1. Ultimately, the ALJ found, C.D.M. has the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b), with the limitations that she can stand and walk in combination up to four hours; cannot climb ladders, ropes, or scaffolds; only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; avoid concentrated exposure to extreme cold weather and temperatures and vibration; should shift position between sitting and standing as frequently as every half hour without loss of productivity; and can frequently handle and finger with the nondominant left upper extremity. This RFC would preclude C.D.M. from returning to her prior work, but would allow her work at

sedentary, unskilled jobs, including such as call out operator (DOT 237.367-014), order clerk (DOT 209.567-014), and dowel inspector (DOT 669.687-014).

The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion, and the briefs of C.D.M. (Dkt. 13, at 3-8) and the Commissioner (Dkt. 16, at 1-4).

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g). The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her

past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other

work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

The central argument by the claimant in the present appeal (Dkt. 13, at 10-16) is that the ALJ failed to appropriately assess her fibromyalgia in a manner consistent with SSR 12-2p, 77 F3d. Reg. 43640-01, 2012 WL 3104869 (2012). The ALJ agreed that C.D.M.'s fibromyalgia was a severe impairment, but found it had a limited impact on her RFC. The ALJ noted that C.D.M. claimed "chronic, severe pain and considerable limitations with virtually any activity," but the "objective medical findings are quite mild." (Tr. 21). The ALJ the reviewed the medical evidence from 2016 and 2017, and concluded that C.D.M.'s "subjective limitations are considerable disproportionate to [the] objective medical findings." (Tr. 22).

The problem, of course, is that by its nature fibromyalgia is difficult to detect by objective medical testing. *See Romero v. Colvin*, 563 Fed.Appx. 618, 621 (10th Cir. 2014). The government correctly points out (Resp. at 6-7) that to some extent the ALJ's failure to more fully discuss the fibromyalgia may be a function of claimant's own emphasis on the limiting effects of her other impairments. Still, the issue of fibromyalgia was raised (Tr. 265), and the ALJ explicitly concluded that the condition was a severe impairment. But the ALJ failed to apply or even mention SSR 12-2p in his assessment of the claimant.

5

SSR 12-2p recognizes that fibromyalgia is "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." 2012 WL 3104869, at *2. The Ruling sets forth the two sets of criteria for finding fibromyalgic impairment, including the existence of tender points, fatigue, and the exclusion of other disorders as the cause of symptoms. In particular, the Ruling recognizes the importance of longitudinal history, "because the symptoms of FM can wax and wane so that a person may have "bad days and good days.'" *Id*. at *6. The Ruling supplies "a detailed test for determining whether a person has an impairment of fibromyalgia and for considering fibromyalgia in the sequential evaluation process." *J.M.V. v. Berryhill*, No. 18-1202-JWB, 2019 WL 2393165, at *4 (D. Kan. June 6, 2019).

Here, despite some evidence of trigger point sensitivity (Tr. 531-34), the ALJ failed to apply or discuss SSR 12-2p. The court concludes that the ALJ erred in failing to apply the Ruling, and cannot under the circumstances of the case find the error was harmless. Given the evidence in the record, "the application of the standards in SSR 12-2P could conceivably alter the ALJ's conclusions about the severity of Plaintiff's impairments and her resulting limitations, or the weight the ALJ chooses to attach to Claimant's testimony or to medical or non-medical opinions." *See J.M.V.*, 2019 WL 2393165, at *4-5.

The court finds that, because this issue requires a remand for the ALJ to consider the evidence concerning fibromyalgia and its impact on C.D.M.'s claim, the court need not address her remaining arguments. On remand, the ALJ may reopen the hearing, if

6

necessary and reconsider any issues as appropriate in light of the evidence. Nothing in the court's opinion is intended to suggest any particular outcome on Plaintiff's application.

IT IS ACCORDINGLY ORDERED this day of September, 2020, that the Commissioner's decision is REVERSED and REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

<u>J. Thomas Marten</u>
J. THOMAS MARTEN, JUDGE